Scofield, J.,
delivered the opinion of tbe court:
As this case comes up on demurrer to the petition, the facts are to be taken as therein set forth.
The claimants, a firm doing business at Westford,Mass., were, on July 1, 1883, the owners of 66,575 pounds of wool lying in the United States bonded warehouse at Boston. The wool was imported from England, March 8, 1880, by Aaron D. Weld’s Sons, and placed in the warehouse, where it remained until August 31, 1883. It was then removed by the claimants.
The duties were paid March 7, 1881, but by whom does not appear.
The wool was purchased by the claimants from the importers, but at what time does not appear, further than it was prior to July 1, 1883.
The claimants made a demand upon the collector of the port of Boston for $665.75, a sum equal to the difference between the duties that had been levied and paid and the duty to which the wool was subject under the Tariff Act of March 3, 1883. Payment was refused.
The sudden change in prices consequent upon a change of duties often brings financial disaster to importers and jobbers. In the Tariff Act of March 3,1883, are two provisions intended for the relief of such parties. The first postpones for nearly four months the time when the act shall take effect, thus giving so much time to prepare for the change. The other is found in the tenth section of the act, the construction of which is in controversy here. That section provides:
“That all imported goods, •wares, and merchandise which may be in the public stores or bonded warehouses on the day and year when this act shall go into effect, except as otherwise provided in this act, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported respectively after that day ; and all goods, wares, and merchandise remaining in bonded warehouses on the day and year this act shall take effect, and upon which the duties shall have been paid, shall be entitled to a refund of the difference between the amount of duties paid and the amount of duties said goods, wares, and merchandise would be subject to if the same were imported respectively after that date.”
*282 The language of this section, so far as it relates to goods upon which the duties had been paid, is very general. Taken by itself it fully sustains the claimants’ demand, for their goods were in the bonded warehouse when the act went into effect, and the duties had been paid.
The defendants, however, contend that the claimants can derive no benefit from this section, because their goods, having been in the bonded warehouse for more than three years, were abandoned to the government, under section 2971, Kevised Statutes. This section provides that “ any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the government, and sold, under such regulations as the Secretary of the Treasury may prescribe.”
Standing by itself this section might support the defendants’ position. It implies that the title of the original owners, by lapse of time and operation of law, has become divested and the government has succeeded to the ownership. The original Act July 14, 1862 (12 Stat. L., p. 560), from which this section is taken, was based upon that theory, and so it provided that the proceeds of sale should be paid into the Treasury. The character of this provision and purpose of the government have been entirely changed by the Act July 28, 1866 (14 Stat. L., p. 330), now section 2972, which provides that “the Secretary of the Treasury may pay to the owner, consignee, or agent of such merchandise the proceeds thereof, after deducting duties, charges, and expenses.”
Since this enactment the goods are no longer to be regarded as abandoned by the owner to the government. The ownership continues without change, but after the sale attaches to the net proceeds instead of the goods. The two sections construed together provide a mode for the collection of duties and charges and the clearance of the warehouses. When the goods have remained in bond more than three years the government acquires a right to sell them for the purpose named, but cannot pocket the proceeds. Hence the practice has arisen in the Treasury Department to allow the owner, at any time before the goods are advertised for sale, to remove the same upon the payment of duties and charges. Of this practice the Attorney-General, in an opinion addressed to the Secretary of the Treasury dated February 7, 1884, says:
*283 “ I perceive no legal objection to the existing practice of your department * * * whereby, in lieu of a formal sale, the owner, consignee, or agent is permitted, to pay the duties, charges, &c., that have accrued thereon, and take them away.”
We not only see no legal objection to this practice, but we do not see how the Secretary could, with propriety, adopt any other. A sale of the goods for the mere purpose of collecting charges or clearing the warehouse, whjle the owner is willing to pay the charges and remove the goods, would only cause trouble and expense, without a particle of advantage to anybody, except possibly to speculative purchasers at a forced sale.
It may also be observed that llie tenth section of the late Tariff Act is remedial in its purpose, and to effect that purpose should be liberally construed. I>v its terms “ all goods, wares, and merchandise remaining in a bonded warehouse on the day and year this act shall take effect, and upon which the duties shall have been paid, shall be entitled to a refund,” &c. The claimants’ goods remained in the bonded warehouse and the duties had been paid. No sale had been authorized, and according to the practice of the Treasury Department none would be authorized unless the owners refused to pay the charges and remove the goods.
Apparently Congress intended that all goods remaining in the bonded warehouse July 1, 1883, and which, according to the construction and practice of the department under sections 2971 and 2972, might be withdrawn by the consignee upon payment of duties and charges, should go upon the market with no heavier burdens than were to be imposed, under the new tariff, upon later importations.
It is further contended, on the part of the defendants, that even if a refund of duties can be legally demanded the present claimants are not the proper parties to receive it.
The tenth section does not distinctly point out the party who is entitled to demand the refund. It only provides that “ the goods, loares, and merchandise * * * shall be entitled to a refund.” Whatever adheres in or attaches to the goods goes with them to the owner. The claimants were the owners of the goods prior to and on the 1st day of July, 1883, when the act took effect, and also when they removed them from the warehouse, August 31-, 1883.
*284 Whether the duties were paid by the claimants or the importers does not appear. If not paid by the claimants directly to the government, the amount must have been considered in the purchase and entered iuto the price.
The court holds that the claimants are entitled to claim the refund, and overrules the demurrer.