ANGLO-CALIFORNIA BANK, Limited, v. SECRETARY OF TREASURY.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1896.)

No. 273.

CUSTOMS DUTIES—WITHDRAWAL FROM BOND—IMPORTATION UNDER PRIOR LAWS.
Certain steel rails were imported and placed under bond, the warehouse entries being liquidated at $17 per ton under the existing tariff law of March 3, 1883. They remained in the warehouse over three years, and became liable to be regarded as abandoned, under Rev. St. § 2971. Such sale was postponed by the secretary of the treasury at the request of the importers, and in the meantime the McKinley act (October 1, 1890), and the Wilson act (August 28, 1894) regulating the tariff were passed. The importer subsequently offered to withdraw the rails upon paying the duty provided by the latter act, claiming that the duty payable on withdrawal had been reduced by each of the acts mentioned, and that Rev. St. § 2971, was repealed. *Held*, that such section was not repealed or modified by the administrative act (June 10, 1890), or the McKinley or Wilson act; that the right of the government to sell the rails for the purpose of collecting the duties, etc., due was an "accrued right," within the saving clauses of such acts; and that the goods were liable for

the duties provided by the act of 1883, in force at the time of their abandonment. 71 Fed. 505, affirmed. Abbot v. U. S., 20 Ct. Cl. 280, not followed. In re Schmid, 54 Fed. 145, distinguished.

Appeal from the Circuit Court of the United States for the Northern District of California.

In the matter of the petition and application of the secretary of the treasury for a review, under an act of congress, approved June 10, 1890, entitled "An act to simplify the laws in relation to the collection of revenues," of the questions of law and fact involved in a decision of the board of general appraisers on duty at the port of New York, in the matter of the classification of certain T steel rails, merchandise imported by the Bank of California, of San Francisco, Cal., into the port of said San Francisco, the subsequent liquidation of duties whereon was protested by the Anglo-California Bank, Limited, at the same place.

The board of general appraisers sustained the protest of the Anglo-California Bank against the decision of the collector of customs at San Francisco. The circuit court reversed the decision of the appraisers. 71 Fed. 505. The material facts upon which the matter in issue was tried are stated in the opinion of the appraisers and of the circuit court to be as follows:

"The Bank of California at various times between March 2, and June 24, 1887, imported into the port of San Francisco certain T steel rails, aggregating 5,678 tons. These rails remained in general order unclaimed until February 27, 1888, when warehouse entries thereof were made and bonds given by the Bank of California as importer and consignee. Said warehouse entries were liquidated, under the act of March 3, 1883, at $17 per ton, and at the expiration of one year from the date of the importation the additional duty of 10 per cent., prescribed by section 2970, Rev. St., was charged up on the bonds against the merchandise. Between September 21, 1888, and December 6, 1889, four withdrawals for consumption were made, and the amount of duties charged thereon was paid. When the bonded period of three years was about to expire, the Oregon Pacific Railroad Company, for whose account the steel rails in question had been imported, represented to the treasury department that serious casualties had occurred on its road by storms and floods, and requested a postponement of the sale of merchandise required under section 2971, Rev. St., whereupon the secretary of the treasury authorized a postponement of the sale for three months without giving due notice to or having the consent of the principal or sureties on the warehouse bonds. Similar postponements have been allowed for periods of six months up to the present date, the Bank of California uniting in two instances in the application for delay. A postponement of the sale of the merchandise allowed by the secretary of the treasury September 16, 1893, was conditioned upon the consent of the sureties on the bond. The final postponement was authorized by the secretary of the treasury March 25, 1895, pending decision regarding the legal status of the goods by the board of general appraisers. Under date of June 30, 1890, more than three years after the date of importation, the secretary of the treasury authorized the collector at San Francisco to permit withdrawals for consumption of the steel rails in question, from time to time, in such quantities as might be desired. On October 21, 1890, the treasury department decided that withdrawals might be made under the act of 1890, by the importers, at the rates of duty, regular and additional, prescribed by the act of 1883. Notwithstanding this decision, 3,306 tons of steel rails were withdrawn for consumption, and, in addition to 10 per cent., as prescribed by section 2970, Rev. St., duties were paid thereon and accepted by the collector at $13.44 per ton, the rate prescribed therefor in the act of October 1, 1890. All charges and expenses, including storage charges, have been paid. The importers recently offered to withdraw for consumption the remainder of the merchandise in bonded warehouse at the rate prescribed in paragraph 117 of the act of August 28, 1894. Permission to make such withdrawals has not been granted

·by 'the secretary of the treasury, but in lieu thereof authority has been given the collector to permit withdrawal entry to be made by the importers of a small portion of the merchandise, at the rates prescribed in the act of March 3, 1883, in order that a test case for judicial decision might be made. In accordance with the authority thus granted, entry for consumption of 20 of the steel rails in question (weighing about five tons) was made by the importers, and duty was assessed thereon by the collector at $17 per ton, and 10 per cent. additional, under the act of March 3, 1883, the act in force at the time the merchandise was imported. Against this action the importers protested, claiming that the merchandise in question, having been withdrawn for consumption after August, 1894, was properly dutiable at seven-twentieths of 1 cent per pound, in accordance with the provisions of section 1 and paragraph 117 of the present act."

Upon these facts the questions presented involve a construction of certain sections of the Revised Statutes of the United States; of the act of June 10, 1890, to simplify the laws in relation to the collection of the revenue (26 Stat. 131, 142), known as the "Administrative Act"; of the act of October 1, 1890, to reduce the revenue and equalize duties on imports, and for other purposes (26 Stat. 567, 625), known as the "McKinley Act"; and of the act of August 28, 1894, to reduce taxation, to provide revenue for the government, and for other purposes (28 Stat. 509, 570), known as the "Wilson Act." The sections of the statutes read as follows:

### Revised Statutes.

"Sec. 2970. Any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within one year from the date of original importation on payment of the duties and charges to which it may be subject by law at the time of such withdrawal; and after the expiration of one year from the date of original importation, and until the expiration of three years from such date, any merchandise in bond may be withdrawn for consumption on payment of the duties assessed on the original entry and charges, and an additional duty of ten per centum of the amount of such duties and charges.

"Sec. 2971. All merchandise which may be deposited in public store or bonded warehouse may be withdrawn by the owner for exportation to foreign countries; or may be transshipped to any port of the Pacific or western coast of the United States at any time before the expiration of three years from the date of original importation; such goods on arrival at a Pacific or western port to be subject to the same rules and regulations as if originally imported there. Any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the government, and sold under such regulations as the secretary of the treasury may prescribe, and the proceeds paid into the treasury. In computing this period of three years, ·if such exportation or transshipment of any merchandise shall, either for the whole or any part of the term of three years, have been prevented by reason of any order of the president, the time during which such exportation or transshipment of such merchandise shall have been so prevented shall be excluded from the computation. Merchandise withdrawn for exportation shall be subject only to the payment of such storage and charges as may be due thereon.

"Sec. 2972. The secretary of the treasury, in case of any sale of any merchandise remaining in public store or bonded warehouse beyond three years, may pay to the owner, consignee, or agent of such merchandise, the proceeds thereof, after deducting duties, charges, and expenses in conformity with the provision relating to the sale of merchandise remaining in a warehouse for more than one year. . .

"Sec. 2973. If any merchandise shall remain in public store beyond one year, without payment of the duties and charges thereon, except as hereinbefore provided, then such merchandise shall be appraised by the appraisers, ·if there be any at such port * * * and sold by the collector at public auction, on due public notice thereof being first given, in the manner and for the time to be prescribed by a general regulation of the treasury department. At such public sale, distinct printed catalogues descriptive of such

merchandise, with the appraised value affixed thereto, shall be distributed among the persons present at such sale. A reasonable opportunity shall be given before such sale, to persons desirous of purchasing, to inspect the quality of such merchandise. The proceeds of such sales, after deducting the usual rate of storage at the port in question, with all other charges and expenses, including duties, shall be paid over to the owner, importer, consignee, or agent, and proper receipts taken for the same."

### Administrative Act.

"Sec. 20. Any merchandise deposited in any public or private bonded warehouse may be withdrawn for consumption within three years from the date of original importation, on payment of the duties and charges to which it may be subject by law at the time of such withdrawal: Provided, that nothing herein shall affect or impair existing provisions of law in regard to the disposal of perishable or explosive articles."

Section 29, after enumerating several sections of the Revised Statutes (sections 2970 and 2971 not being mentioned), and repealing them in direct terms, reads as follows:

"And all other acts and parts of acts inconsistent with the provisions of this act, are hereby repealed, but the repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before the said repeal or modifications; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. * * * "

### McKinley Act.

The enacting clause reads as follows:

"That on and after the sixth day of October, eighteen hundred and ninety, unless otherwise specially provided for in this act, there shall be levied, collected, and paid upon all articles imported from foreign countries, and mentioned in the schedules herein contained, the rates of duty which are, by the schedules and paragraphs, respectively prescribed, namely."

Schedule C, paragraph 141:

"Railway bars, made of iron or steel, and railway bars made in part of steel, T rails, and punched iron or steel flat rails, six-tenths of one cent per pound."

Sections 50, 54, and 55 of this act read as follows:

"Sec. 50. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to no other duty upon the entry or the withdrawal thereof than if the same were imported respectively after that day: Provided, that any imported merchandise deposited in bond in any public or private bonded warehouse having been so deposited prior to the first day of October, eighteen hundred and ninety, may be withdrawn for consumption at any time prior to February first, eighteen hundred and ninety-one, upon the payment of duties at the rates in force prior to the passage of this act: Provided further, that when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse said duties shall be levied and collected upon the weight of such merchandise at the time of its withdrawal."

"Sec. 54. That section twenty of the act entitled 'An act to simplify the laws in relation to the collection of revenues,' approved June 10th, eighteen hundred and ninety, is hereby amended to read as follows: 'Sec. 20. That any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within three years from the date of original importation, on payment of the duties and charges to which it may be

subject by law at the time of such withdrawal: Provided, that nothing herein shall affect or impair existing provisions of law in regard to the disposal of perishable or explosive articles.'"

"Sec. 55. That all laws and parts of laws inconsistent with this act are hereby repealed: Provided, however, that the repeal of existing laws, or modifications thereof, embraced in this act shall not affect any act done or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before the said repeal or modifications, but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modification had not been made."

Wilson Act.

The enacting clause is:

"That on and after the first day of August, eighteen hundred and ninety-four, unless otherwise specially provided for in this act, there shall be levied, collected and paid upon all articles imported from foreign countries or withdrawn for consumption, and mentioned in the schedules herein contained the rates of duty which are by the schedules and paragraphs respectively prescribed, namely."

Schedule C, paragraph 117:

"Railway bars, made of iron or steel, and railway bars made in part of steel, T rails, and punched iron or steel flat rails seven-twentieths of one cent per pound" (which computed upon the basis of 2,240 pounds to the ton would be $7.84 per ton.)

Section 72:

"All acts and parts of acts inconsistent with the provisions of this act are hereby repealed, but the repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued or any suit or proceeding had or commenced in any civil cause before the said repeal or modifications; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. * * *"

Section 10 of the act of March 3, 1883 (22 Stat. 525), to which reference will be made, reads as follows:

"That all imported goods, wares, and merchandise which may be in the public stores or bonded warehouses on the day and year when this act shall go into effect, except as otherwise provided in this act, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported respectively after that day; and all goods, wares, and merchandise remaining in bonded warehouses on the day and year this act shall take effect, and upon which the duties shall have been paid, shall be entitled to a refund of the difference between the amount of duties paid and the amount of duties said goods, wares, and merchandise would be subject to if the same were imported respectively after that date."

Chas. A. Garter, Jesse W. Lilienthal, and J. F. Evans, for appellant.

H. S. Foote, U. S. Atty., and Samuel Knight, Asst. U. S. Atty., for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). The contention of appellant, upon the foregoing state of facts, and the various provisions of the statutes relating thereto, is to the effect that when the McKinley act went into operation the specific rate of duty upon steel rails was changed from $17 per ton to $13.44; that this rate

was again changed by the Wilson act to $7.84; that section 2970 of the Revised Statutes has been repealed, and is, therefore, inapplicable to the merchandise in controversy in this proceeding; that the words "shall be regarded as abandoned to the government," used in section 2971, were repealed by the later sections of the Revised Statutes, and have been so treated by the regulations and practice of the treasury department.   The contention of the appellee is that, at the expiration of three years from the date of the original importation, the merchandise in question became abandoned to the United States, and was subject to sale as such to satisfy the duties and charges thereon then in force, to wit, the duty of $17 a ton under paragraph 147 of the tariff act of March 3, 1883, and 10 per cent. additional thereon, with warehouse charges, under section 2970 of the Revised Statutes; that this right to sell the merchandise, and to deduct from the proceeds thereof the duties and charges as above mentioned, was a right accrued at such time to the United States, and a liability incurred by said merchandise, and the importer thereof, within the meaning of section 29 of the administrative act of June 10, 1890, section 55 of the McKinley act of October 1, 1890, and section 72 of the Wilson act of August 28, 1894; that section 2971 of the Revised Statutes was not repealed nor in any manner modified by the administrative act, nor by the McKinley act, nor by the Wilson act, but ever has been, since its enactment, in full force and effect, save as modified by section 2972; and that it therefore necessarily follows that the duties and charges properly assessed against the steel rails, and collected from the proceeds of the sale thereof, or from the importer thereof, by the collector of customs, are those in force at the time of their abandonment.   Which contention is correct?

The questions involved in this case have been argued with marked ability upon both sides.   The authorities bearing upon the questions have been collected and discussed at length.   The various acts of congress have been thoroughly reviewed, and our attention has been called to the entire system of tariff legislation.   The contention of appellant is sustained by the decision of the court of claims in Abbot v. U. S., 20 Ct. Cl. 280.   The contention of appellee is sustained by the views expressed by Attorney General Brewster (17 Op. Atty. Gen. 650), and Attorney General Olney January 17, 1895.   Owing to these conflicting opinions, the contest in the present case is presented with the evident purpose of having the questions authoritatively settled.

In the outset, it will be conceded that revenue statutes are enacted under the general power of the government to impose a tax; that in order to sustain the tax in any given case it must affirmatively appear that the power to impose it comes within the letter and spirit of the law authorizing it; that if there are any doubts upon the question the construction should be in favor of the importer. Mr. Justice Story, in Adams v. Bancroft, 3 Sumn. 384, Fed. Cas. No. 44, said:

"That laws imposing duties are never construed beyond the natural import of the language, and duties are never imposed upon the citizens upon doubt-

ful interpretations; for every duty imposes a burden on the public at large, and is construed strictly, and must be made out in a clear and determinate manner from the language of the statute."

The same rule has been expressed by the supreme court. Hart-ranft v. Wiegmann, 121 U. S. 609, 616, 7 Sup. Ct. 1240, 1244, and authorities there cited.

The same learned justice, in the earlier case of U. S. v. Breed, 1 Sumn. 159, Fed. Cas. No. 14,638, laid down the rule as to the proper construction to be given to such acts as follows:

"Revenue and duty acts are not, in the sense of the law, penal acts, and are not, therefore, to be construed strictly. Nor are they, on the other hand, acts in furtherance of private rights and liberty, or remedial, and therefore to be construed with extraordinary liberality. They are to be construed according to the true import and meaning of their terms, and, when the legislative intention is ascertained, that, and that only, is to be our guide in interpreting them."

Such laws are more remedial than penal in their nature. They are intended to prevent fraud, to suppress public wrong, and to promote the public good, and should always be so construed as to effectually carry out the purposes and objects which they were intended to accomplish. Taylor v. U. S., 3 How. 197; Cliquot's Champagne, 3 Wall. 115; U. S. v. Hodson, 10 Wall. 395; Smythe v. Fiske, 23 Wall. 374, 380.

The steel rails in question were imported in 1887, and entered for warehousing February 27, 1888, and the duties liquidated under the act of 1883. At that time the rights and liabilities of the importers were clear and plain. They had the right to withdraw the rails within one year by paying the duties then existing, viz. $17 per ton, or they might, after the expiration of one year, and within three years, withdraw the rails upon paying the duty of $17 per ton, and 10 per cent. additional duty. Rev. St. § 2970. Upon this point there can be no controversy. But the rails in question were not withdrawn until after the expiration of the three years, and hence, under the terms of section 2971, were to be "regarded as abandoned to the government." But this right of the government was not enforced because the Oregon Pacific Railroad, for whose account the rails were imported, requested a postponement of the sale for three months on account of serious casualties that had occurred to its railroad. Other postponements were for like reasons made for periods of six months, and in the meantime the tariff acts designated as the "McKinley act" and the "Wilson act" were passed.

Admitting, at the threshold of the discussion, that the word "abandonment," when first used in the act of August 5, 1861 (12 Stat. 294, § 5), and repeated in the act of July 14, 1862 (12 Stat. 560, § 21), during the existence of war was then used in the broad sense of divesting the importer or owner of any title or interest in the goods, it does not necessarily follow that the same interpretation is to be given to it in the provisions of section 2971. The fact is that by the act of July 28, 1866 (14 Stat. 330, § 10), the provisions of the act of August 6, 1846, were re-enacted, so that thereafter the law provided that, after the sale of the merchandise, the excess, after de-

ducting storage, expenses, and duties, etc., should be paid to the owner. The various provisions of the existing laws were thereafter incorporated into the provisions of the Revised Statutes. It therefore follows that the word "abandonment," as used in section 2971, in connection with the provisions contained in section 2972, is not to be construed as an absolute abandonment of the goods, so as to vest the title thereof in the government; but the word is used in the sense of vesting absolute authority and power in the government, when the goods have remained in the warehouse for a period of more than three years, to sell and dispose of the same for the purpose of collecting the duties, charges, and expenses thereon. This, as we shall have occasion hereafter to state, might be accomplished by a regulation of the department allowing the goods to be withdrawn by the owner upon payment of such duties, etc.

Without repeating the respective arguments of counsel in their review of the tariff legislation, the policy of the government in the collection of revenue duties on imported goods, and the rights of the importers to withdraw from bonded warehouses imported merchandise therein stored, we are of opinion that, after an extended examination thereof, it may safely be said that, throughout the entire legislation of this country upon the subject, the intent of congress to limit the right of the importer to withdraw his goods within a certain time, and to impose condition for his failure so to do, is made manifest. If there were no provisions in the statute for the sale of the goods by the government, it will readily be seen, as was said by Brown, J., in U. S. *v.* De Visser, 10 Fed. 642, 649, that:

"The time for the payment of duties on all warehouse goods would be practically considerably enlarged, since payment of duties could always be safely deferred until the government was ready to effect a sale. To avoid this practical extension of the period for payment of duties, and to secure prompt payment within the time intended to be limited by the warehouse acts, some provision of this kind was necessary. Moreover, the handling of the vast amount of warehoused goods, the orderly collection of the duties upon them through the proper subordinate officers, and the necessity of a transfer of the goods to different hands, for the purpose of a government sale,—in other words, the convenience of the public business,—also required that a period be fixed when the importer's right to pay the duties and to control the goods should cease, and when the government might proceed to sell without inconvenience and without question. The various acts passed since the adoption of the warehouse system show, I think, that the purpose of the statute in question was not only for convenience in the transaction of the public business, but especially, also, to secure the prompt payment of duties within the prescribed period."

The argument of appellant, that the action of the secretary of the treasury in authorizing the various postponements of the sale of the rails had the effect to nullify the provisions of section 2971 with reference to the abandonment of merchandise remaining in the bonded warehouse beyond the period of three years, ought not to be sustained. It is true that, under the revenue laws, the secretary of the treasury, in the collection of the revenues, is invested with much discretion in the exercise of his administrative functions. He has the power to prescribe rules and regulations as to the modes of collection, etc.; but he cannot, in the exercise of this power, alter or amend the provisions of the revenue laws. "All he can do is

to regulate the mode of proceeding to carry into effect what congress has enacted." Morrill v. Jones, 106 U. S. 467, 1 Sup. Ct. 424; Campbell v. U. S., 107 U. S. 407, 410, 2 Sup. Ct. 759, 763. The regulations, as made by the secretary of the treasury, cannot, of course, control the courts in the construction of the revenue laws when their meaning is plain. Yet, if there has been a long acquiescence in such regulations, and the rights of parties have been adjusted in accordance therewith, the courts ought not to take a different view "without the most cogent and persuasive reasons." Brown v. U. S., 113 U. S. 571, 5 Sup. Ct. 650; U. S. v. Hill, 120 U. S. 170, 182, 7 Sup. Ct. 510, 517; Robertson v. Downing, 127 U. S. 607, 613, 8 Sup. Ct. 1328, 1330.

The action of the secretary of the treasury in postponing the sale of the merchandise after the expiration of three years did not have the effect of giving the importers any new privilege or right, or release them from any liability which existed by law. The regulation of the treasury department of February 27, 1884, that, "within the three years during which goods remaining in bonded warehouse may be withdrawn, collectors of customs will notify the parties concerned of the date on which the period limited by law will expire. After such date, and at any time before the goods are listed for sale, the collector may allow a withdrawal entry for consumption, to be made on payment of all charges and expenses, and the duties, regular and additional, which may have accrued,"—is consistent with the provisions of sections 2971 and 2972, and does not in any manner change or affect the rate of duty and the charges and expenses to which the merchandise had become liable. It is, in effect, the same as if a sale of the goods had been provided for. Attorney General Brewster, in reply to the third question of the secretary of the treasury, as to "whether, under section 2971, Rev. St., goods are to be sold at the expiration of three years from the date of importation, notwithstanding the fact that duties may have been already paid thereon," said:

"While I am of opinion that your third question should be answered in the affirmative, and so answer it, I deem it proper to add that I perceive no legal objection to the existing practice of your department respecting the disposition of goods which have remained in bonded warehouse beyond three years. The objects and requirements of the provisions of section 2971, last above adverted to, are, in my judgment, sufficiently met by that practice whereby, in lieu of a formal sale of goods, the owner, consignee, or agent is permitted to pay the duties, charges, etc., that have accrued thereon, and take them away. In case of a sale, the owner, consignee, or agent of the merchandise would (under section 2972) become entitled to receive the proceeds, after deducting therefrom the duties, charges, and expenses. The practice referred to accomplishes the same end, and is, indeed, a virtual sale of the goods under the power given the secretary of the treasury by the statute."

The act of the secretary of the treasury in allowing the withdrawal of the rails in this case is not inconsistent with the provisions of section 2971, with reference to the abandonment of the merchandise. The secretary, in his letter to the collector of customs allowing the withdrawal, expressly stated that a reference to the decisions of the department for a long series of years shows that it has uniformly held that the duties found due on the warehouse

bond at the date of its expiration became a debt collectible from the proceeds of a sale of the goods or from the sureties on the bond, and that subsequent charges of tariff can neither increase nor decrease the amount of such debt. The letter further stated that the department was not disposed to inflict unnecessary hardship upon the importers by a summary closure of the matter, and, while denying the right of the importers to withdraw the goods unless the duty assessed under the act of March 3, 1883, was paid, permitted them to withdraw a small portion at that rate, and the object of this is stated as follows:

"It may be that duties will be so paid under protest in order that the exaction of duty may be reviewed by the board of general appraisers. Should this prove to be the case, you are further authorized to delay the sale of the remaining property until a decision has been reached."

Surely the importers cannot claim that they were released from any existing liability by reason of this extended favor. The withdrawal of a small portion of the goods was allowed in order to test, not to create, the liability of the importers and the rights of the government in the premises.

The case of Abbot v. U. S., 20 Ct. Cl. 280, decided April 27, 1885, is cited in support of, and is conceded to be an authority in favor of, the position contended for by appellant. In that case the claimants were, on July 1, 1883, the owners of 66,575 pounds of wool lying in the United States bonded warehouse at Boston. The wool was imported from England, March 8, 1880, and placed in the warehouse, where it remained until August 31, 1883. It was then removed by the claimants. The duties were paid March 7, 1881. The claimants made a demand upon the collector of the port for $665.75, a sum equal to the difference between the duties that had been levied and paid and the duty to which the wool was subject under the tariff act of March 3, 1883, and the court held that the claimants were entitled to the refund. The court, after quoting section 10 of the act of 1883, said:

"The language of this section, so far as it relates to goods upon which the duties had been paid, is very general. Taken by itself, it fully sustains the claimants' demand, for their goods were in bonded warehouse when the act went into effect, and the duties had been paid. The defendants, however, contend that the claimants can derive no benefit from this section, because their goods, having been in the bonded warehouse for more than three years, were abandoned to the government under section 2971, Rev. St. This section provides that 'any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the government, and sold under such regulations as the secretary of the treasury may prescribe.' Standing by itself this section might support the defendants' position. It implies that the title of the original owners, by lapse of time and operation of law, has become divested, and the government has succeeded to the ownership. The original act of July 14, 1862 (12 Stat. 560), from which this section is taken, was based upon that theory, and so it provided that the proceeds of sale should be paid into the treasury. The character of this provision and purpose of the government have been entirely changed by the act of July 28, 1866 (14 Stat. 330), now section 2972, which provides that 'the secretary of the treasury may pay to the owner, consignee, or agent of such merchandise, the proceeds thereof, after deducting duties, charges, and expenses.' Since this enactment, the goods are no longer to be regarded as abandoned by the owner to the government. The ownership continues with-

out change, but after the sale attaches to the net proceeds instead of the goods. The two sections, construed together, provide a mode for the collection of duties and charges and the clearance of the warehouses. When the goods have remained in bond more than three years, the government acquires a right to sell them for the purpose named, but cannot pocket the proceeds. Hence the practice has arisen in the treasury department to allow the owner, at any time before the goods are advertised for sale, to remove the same upon the payment of duties and charges."

After quoting with approval the views of Attorney General Brewster as to the practice of the department allowing the owner to withdraw the goods upon the payment of duties, the court further said:

"Apparently congress intended that all goods remaining in the bonded warehouse July 1, 1883, and which, according to the construction and practice of the department under sections 2971 and 2972, might be withdrawn by the consignee upon payment of duties and charges, should go upon the market with no heavier burdens than were to be imposed, under the new tariff, upon later importations."

In so far as this opinion declares that the provisions of section 2971 have been changed by section 2972, so as to allow the importer to remove the goods, after they have been in the bonded warehouse beyond the period of three years, "upon the payment of duties and charges," it is not opposed to the views we have expressed. The claimants in the present case were allowed to withdraw the goods in question upon payment of the duties and charges demanded by the collector. The question is, what amount of duty were the goods subject to?

The court, in the Abbot Case, seemed to be of opinion that, because of the provisions in section 2972, and the practice of the department in allowing the goods to be withdrawn, it was the intention of congress that the goods "should go upon the market with no heavier burdens than were to be imposed, under the new tariff, upon later importations." In this respect we decline to accept the conclusions reached by the court of claims. The opinion is entitled to and has received respectful consideration, but it is not of controlling authority, and ought not to be followed unless its reasoning and conclusion are deemed to be correct.

The case of In re Schmid, 54 Fed. 145, cited and relied upon by appellant, is different in its facts from the case at bar in this, that the goods in question in that case had not been in bond for a period of three years, and hence did not come within the provisions of section 2971.

Is section 2971 repealed by the subsequent tariff acts? We have already quoted at length in the statement of facts the various sections and provisions of the laws which are relied upon by appellant to sustain his contention. They need not be again repeated in full. Section 29 of the administrative act repealed in direct terms several sections of the Revised Statutes, but among them section 2971 is not mentioned. It was not in direct terms repealed. The same section of the act also repealed "all other acts and parts of acts inconsistent" with its provisions, with a saving clause that such repeal or modification of the existing laws "shall not affect any act done, or any right accruing or accrued, * * * but all rights and liabilities under said laws shall continue and may be enforced

in the same manner as if said repeal or modifications had not been made." Section 55 of the McKinley act of October 1, 1890, and section 72 of the Wilson act of August 28, 1894, contain the same provisions. Conceding that section 2970 has been repealed, the question still remains: Is section 2971 inconsistent with or repugnant to any of the provisions contained in the acts above mentioned? It must be conceded that, in order to constitute a repeal of the law upon such grounds, there must be a positive repugnancy between the old law and the new one. This principle is elementary. In no line of cases has this rule been adhered to with greater strictness than in the interpretation of laws enacted for the collection of the revenues. In Wood v. U. S., 16 Pet. 342, 362, the question was presented to the court whether the sixty-sixth section of the act of 1799 had been repealed, or whether it remained in full force. That section of the act, like the one under consideration here, had not been expressly or by direct terms repealed, and the court said:

"The question then arises whether the sixty-sixth section of the act of 1799 (chapter 22), has been repealed, or whether it remains in full force. That it has not been expressly or by direct terms repealed is admitted, and the question resolves itself into the more narrow inquiry whether it has been repealed by necessary implication. We say by necessary implication; for it is not sufficient to establish that subsequent laws cover some, or even all of the cases provided for by it, for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only pro tanto, to the extent of the repugnancy. And it may be added that, in the interpretation of all laws for the collection of revenue, whose provisions are often very complicated and numerous to guard against frauds by importers, it would be a strong ground to assert that the main provisions of any such laws, sedulously introduced to meet the case of a palpable fraud, should be deemed repealed merely because, in subsequent laws, other powers and authorities are given to the customhouse officers, and other modes of proceeding are allowed to be had by them before the goods have passed from their custody, in order to ascertain whether there has been any fraud attempted upon the government. The more natural, if not the necessary, inference in all such cases is that the legislature intend the new laws to be auxiliary to and in aid of the purposes of the old law, even when some of the cases provided for may equally be within the reach of each. There certainly, under such circumstances, ought to be a manifest and total repugnancy in the provisions to lead to the conclusion that the latter laws abrogated and were designed to abrogate the former."

See, also, Aldridge v. Williams, 3 How. 1, 25; The Distilled Spirits, 11 Wall. 356, 365; Fabri v. Murphy, 95 U. S. 191, 196.

In Fabri v. Murphy, the question was whether the merchandise was subject to the additional duty of 10 per cent. imposed by the act of March 14, 1866 (14 Stat. 8). The goods were imported in November, 1869, and were stored in the bonded warehouse until March 20, 1871, when they were withdrawn for consumption. The court held that the goods were subject to the additional duty of 10 per cent. imposed by the act of 1866. In discussing certain acts relating to the revenue, the court said:

"Acts of congress of the kind are often very complex in their provisions, in order to enable those charged with their execution to protect the treasury against the constant attempts of importers to evade the payment of new duties or increased taxation. New regulations often become necessary to enable the officers of the custom to defeat such designs, and the rule is that in

such cases there ought to be a manifest and irreconcilable repugnancy to warrant the conclusion that the old law is abrogated, or that the new law was intended to supersede the antecedent provision."

In the light of these cardinal rules of construction, and of the history, policy, and intention of the revenue laws as hereinbefore discussed, we are of opinion that the provisions of section 2971 are not inconsistent with the various sections of the subsequent tariff acts hereinbefore referred to.

Attorney General Brewster, February 7, 1884, in reply to the question of the secretary, whether section 10 of the act of 1883 is necessarily limited to goods which had not been in bonded warehouses more than three years at the date said act went into operation, among other things, said:

"That the first clause of this section, which deals with imports whereon the duties have not been paid, applies only to such merchandise remaining in the public stores or bonded warehouses on the day the act takes effect as may then lawfully be entered for consumption, is indicated by the words 'upon entry thereof for consumption,' used therein. These words plainly show that the benefits of the provision were meant for merchandise in bond, which, at the time mentioned, the importer is entitled thus to enter, and for none other. * * * Thus, by the then and still existing law, goods in bond can be entered for consumption and withdrawn at any time during the period of three years from the date of original importation. Upon the expiration of this period, however, the privilege so to enter such goods ceases, and (by section 2971, Rev. St.), they are to be 'regarded as abandoned to the government, and sold under such regulations as the secretary of the treasury may prescribe,' etc. It follows that merchandise whereon the duties have not been paid, which had been in the public stores or bonded warehouses more than three years on the day the act of 1883 took effect, does not come within the operation of section 10 of that act. * * * Under section 2977, Rev. St., merchandise upon which duties have been paid may thereafter remain in bonded warehouse in custody of the customs officers at the expense and risk of the owners. But the period during which it may thus remain subject to withdrawal by him is limited; for, unless withdrawn for consumption or exportation within three years from the date of original importation, it becomes liable to be sold as abandoned to the government. Rev. St. § 2971. * * * I am thus led to the conclusion that the whole of the section is inapplicable to merchandise which, on the day the act of 1883 took effect, had remained in bonded warehouse more than three years from the date of original importation, and were then, in contemplation of law, abandoned to the government. In direct answer to your first question I accordingly reply, that, in my opinion, section 10 of the tariff act of March 3, 1883, extends only to goods which had not been in bonded warehouse more than three years at the date that act went into operation. * * * The provision in section 2971 * * * has, I think, a double purpose: First, to enforce the collection of duties, charges, etc., upon the goods; and, second, to relieve their customs service from the care and custody thereof. * * * Yet, as already observed, the privilege thereby conferred of letting the goods remain in warehouse in custody of the custom officers after payment of the duties thereon is subject to the limitation of three years from the date of original importation under the operation of the above mentioned provision in section 2971. At the end of that period they are to be regarded as abandoned to the government, and sold."

If section 2971 is consistent with the provisions of section 10 of the act of 1883, how can it consistently be said that it is repugnant to the sections of the McKinley or Wilson acts which we have cited? The preamble in the tariff acts must be read in the light of what is contained in other parts of the laws, especially of the provisions

of section 29 of the administrative act, section 55 of the McKinley act, and section 72 of the Wilson act, to the effect that the repeal of existing laws or modifications shall not affect any act done "or any right accruing or accrued," etc.   The merchandise in question, having remained in the bonded warehouse for a period of more than three years on the 24th of June, 1890, became, under the laws then existing and in full force, subject to the duty provided in the tariff act of March 3, 1883, and 10 per cent. additional thereon, with warehouse charges as prescribed by law.   This was a right that had accrued to the government prior to the passage of the McKinley or Wilson tariff acts.   In U. S. v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002, the court held that goods arriving at the port of New York August 7, 1894, entered at the customhouse and duties paid August 8, 1894, and the entry liquidated as entered at the customhouse August 28, 1894, on which day the tariff act of August, 1894, became a law, were subject to duty under the act of October 1, 1890, and not to duty under the act of August 28, 1894.   The court, in the course of its opinion, after quoting in full section 72 of the Wilson act and the provisions of section 54 of the McKinley act, said:

"This merchandise was entered for consumption and delivered after August 1, and before August 28, 1894, when the act in question became a law. It was subject, then, to the rates of duty imposed by the law in force at that time, namely, the act of October 1, 1890, and the duties were properly assessed by the collector under that law, unless some provision to the contrary is to be found in the act of August 28, 1894."

After quoting the preamble in the first section of the act of 1894, the court continues:

"The contention is that, the language of that section being free from all obscurity and ambiguity, there is no room for construction, and that the court is imperatively required to conclude that it was the intention of congress that the act should have a retrospective operation as of August 1, 1894, although it did not become a law until after that date. It is conceded that the general rule is, as stated in U. S. v. Heth, 3 Cranch, 398, 413, that 'words in a statute ought not to have a retrospective application unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied,' and that the usual course in tariff legislation has been, inasmuch as some time is necessary to enable importers and business men to act understandingly, to fix a future date at which the statutes are to become operative. The question is not one of construction, but of intention as to the operative effect of this act because of the existence of the particular date in section 1. In view of the general rule and the admitted policy in respect of such laws, is there anything on the face of the act which raises such a doubt in the matter as justifies the court in considering whether the language used in that particular section must be literally applied in the case before it? And upon the threshold we are met with the fact that the act of October 1, 1890, was not repealed in terms until August 28, 1894, and that the repealing section of the latter act kept in force every right and liability of the government, or of any person, which had been incurred or accrued prior to the passage thereof, and thereby every such right or liability was excepted out of the effect sought to be given to the first section. The right of the government to duties under the tariff law which existed between August 1st and August 28th was a right accruing prior to the passage of the act of 1894 (that is, the date when the bill became a law); and the obligation of the importers between August 1st and August 28th to pay the duties on their entries under existing tariff law was a liability under that law arising prior to the passage of the act of 1894; and, if congress intended that section 1

should relate back to August 1st, still the intention is quite as apparent that the act of October, 1890, should remain in full force and effect until the passage of the new act on August 28th, and that all acts done, rights accrued, and liabilities incurred under the earlier act, prior to the repeal, should be saved from the effect thereof, as to all parties interested, the United States included. The duties under consideration were paid August 8th, and the merchandise delivered on August 11th, but it was not until August 28th that the fact was stamped on the entry that the goods were liquidated as entered. There was no change in the classification, and no additional duty was demanded or collected, and the payment made at the time of entering the merchandise for consumption was the payment of duties. Barney v. Rickard, 157 U. S. 352, 15 Sup. Ct. 642. The original assessment of duty was right, and the final liquidation was the same, and there was no specific provision in the act of 1894 requiring a liquidation at the rates under that act. How, then, can it be held that the act of October 1, 1890, was intended to be repealed by retroaction? Moreover, in arriving at the true intention of congress, we cannot treat section 1 as if it constituted the entire act, but must deduce the intention from a view of the whole statute and from the material parts of it. * * * Again, a higher rate of duty was imposed on many articles by the act of 1894 than under the prior act, and a lower rate of duty on others, while some that were free were made dutiable, as, for instance, the article of sugar. Must duties paid between August 1st and August 28th be refunded where the rate was lowered, and assessed where the rate was raised, or a duty imposed where none existed? Clearly not. These considerations lead to the conclusion that the act ought not to be construed to operate retrospectively, contrary to the general rule, and so as to turn what was intended to secure a period of time to enable business men to act understandingly under the new law into a source of confusion and mischief to the contrary. * * * And, as the act of October 1, 1890, was not repealed by the act of August, 1894, until the latter act became a law, when inconsistent laws were declared thereby repealed, we think it cannot be doubted that congress intended the rates of duty prescribed by the act of 1894 to be levied on the 1st day of August, if the bill should then be a law, and, if not, then as soon after that date as it should become a law. On the 1st day of August the duties prescribed by the first section of the act of 1894 could not be lawfully levied, and, so far as the importations in this case are concerned, and others similarly situated, the law required the exaction of the duties prescribed by the act of 1890. As to such importations the first section of the act of 1894 could not be literally carried out, unless by holding it to operate as a retroactive repeal, notwithstanding the saving clause, and this we consider altogether inadmissible. The language of section 1 was that on and after the 1st of August there 'shall' be levied, and of the second section that on and after the 1st day of August certain enumerated articles when imported 'shall' be exempt from duty. In our judgment, the word 'shall' spoke for the future, and was not intended to apply to transactions completed when the act became a law."

Appellant relies upon the words "or withdrawn for consumption," as found in the preamble of the Wilson act, to sustain the position that the rate of duties therein prescribed apply, not only to merchandise thereafter imported from foreign countries, but also to merchandise that had remained in the bonded warehouse for a period of more than three years which should thereafter be "withdrawn for consumption." It may be admitted that such a construction could and should be given to the language of the preamble, if its interpretation was to be drawn from that section alone. But it is the duty of the court to examine the entire act, or, at least, the provisions which have any special bearing upon the question, and also to examine the provisions of other acts which are to be construed in pari materia therewith. The entire revenue laws in force must not be overlooked. All acts not repealed must be taken into considera-

tion, and harmonized, if possible, so as to make a consistent whole. To give to the section in question the construction which appellant claims for it would, as we have already shown, be inconsistent with the history and general policy of the tariff legislation of this country and repugnant to various provisions of the existing revenue laws. To construe the words "withdrawn for consumption" as intended to apply to the provisions of the previous revenue acts allowing goods to be "withdrawn for consumption" within three years makes it consistent, and such, we believe, was the intention of congress.

Attorney General Olney, in a letter dated January 17, 1895, to the secretary of the treasury, with reference to rates of duty chargeable on certain goods which were originally imported while the provisions of the McKinley tariff act of 1890 were still in force, but remained in the custody of the government until after the passage of the Wilson tariff act of 1894, expressed views which we believe to be correct and directly applicable here. He said that, by the express language of section 1 of the act of 1894:

"The new rates apply, not to all warehoused goods, as by section 50 of the act of 1890, but only to 'articles [thereafter] imported from foreign countries, or withdrawn for consumption.' The latter clause should be construed with the prior legislation above quoted, so as to constitute a harmonious whole. In my opinion, therefore, goods imported and entered for warehouse prior to the act of 1894, and not withdrawn for consumption within three years from the date of original importation, are unaffected by the new rates of duty; and the 'duties' mentioned in section 2972 of the Revised Statutes are the duties to which they were previously subject, whatever be the construction to be put upon this section in other respects. My opinion applies, not only to goods imported within three years before the act of 1894 took effect, but to all goods theretofore imported and then subject to the tariff rates of 1890."

For the reasons herein given we are of opinion that the contention of the appellee is correct. The judgment of the circuit court is affirmed, with costs.