### UNITED STATES v. McKETRICK et al.
District Court, S. D. New York.
Feb. 7, 1934.

Martin Conboy, U. S. Atty., of New York City (Miss Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Olvany, Eisner & Donnelly, of New York City (Oscar Igstaedter, of New York City, of counsel), for Standard Acc. Ins. Co.

WOOLSEY, District Judge.

The United States may have judgment against both defendants for the sum of $1,265.48, as prayed for, with interest thereon from the 30th day of August, 1929.

I. The defendant McKetrick was the importer of 262 cases of medicinal bitters which under the provisions of the Tariff Act of 1922, § 1, Schedule 8, par. 802 (19 USCA § 121, Schedule 8, par. 802), were subject to a specific duty of $5 per proof gallon; consequently, the computation of the duty involved merely a matter of multiplication of the number of gallons by the amount of $5 fixed as the duty.

McKetrick, the importer, has defaulted in this action.

The case was tried on a stipulation of facts signed by the counsel for the surety, supplemented by evidence from an employee of the Custom House who put in the entry papers as an exhibit in the case.

By the stipulation the following facts were established:

"1. That on or about the 30th day of August, 1926, the defendant Daniel H. McKetrick brought into the United States at the Port and Collection District of New York certain goods, wares and merchandise, to wit, medicated bitters.

"2. That thereafter and on or about the 10th day of January, 1927, the said goods, wares and merchandise were placed in a bonded warehouse and the said defendant Daniel H. McKetrick entered for warehousing, the number of said entry being WHB 22438, the aforesaid goods, wares and merchandise, and on or about the 10th day of January, 1927, the said defendant Daniel H. McKetrick, as principal, and the defendant Standard Accident Insurance Company, as surety, executed under their respective seals and thereafter and on or about the 12th day of January, 1927, delivered to the plaintiff a bond, in writing, a copy of which bond is annexed to the amended complaint.

"3. That said merchandise was never withdrawn by the defendants or either of them from said bonded warehouse.

"4. That said merchandise remained more than three years in said bonded warehouse and was then sold as abandoned to the Government in purported pursuance of the provisions of Section 559 of the Tariff Act of 1922, and the regulations thereunder.

"5. That the proceeds of such sale after the deduction of proper charges and expenses amounted to $2878.55 which sum has been retained by the Collector of Customs.

"6. That on or about the 31st day of May, 1927, the Collector of Customs made a purported liquidation of the entry of said

merchandise and purported to assess duties thereon amounting to $4144.03 which sum the plaintiff claims, by reason of said purported liquidation became due and owing to the plaintiff from the defendants.

"7. That the plaintiff claims there is due and owing from the defendants to the plaintiff the sum of $1265.48, no part of which has been paid although demanded.

"8. That the merchandise was sold by the Collector in purported compliance with the provisions of Section 559 of the Tariff Act of 1922 and in purported compliance with the regulations of the Secretary of the Treasury.

"9. That catalogues of the sale were distributed at the sale.

"10. That the only information in said catalogue relating to the merchandise herein was as follows:

| Lot | Lot | Marks | Description of Goods | Value |
|-----|-----|-------|----------------------|-------|
| 1541 | WH | H H H | 117 cases—2,454 bottles of Health Bitters. To be seen at 617 West 47th St., N. Y. C. | 1486 |

"11. That the collector would not permit a warehouse entry to be made unless a bond in the form of the bond herein were executed and delivered.

"12. That 262 cases of merchandise were covered by the invoice and entry of which 3 cases only were designated to be opened and examined for the purpose of appraisal or otherwise."

■ II. The Standard Accident Insurance Company, the surety on the warehouse bond, contends, inter alia, that under the Tariff Act of 1922 the collector was without authority to exact a warehouse bond. I disagree.

By section 623 of the Tariff Act of 1922 (19 USCA § 539), it was provided as follows: "General Regulations. In addition to the specific powers conferred by this chapter, the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this chapter."

By article 287 of the Customs Regulations of 1923, it was provided: "Estimation of Duties—Bond—After the duty has been estimated upon the warehouse entry in the same manner as upon an entry for consumption, the collector will take a bond on Customs Form 7555 in double the amount of estimated duties."

The bond in the instant case, which is annexed to the complaint, is a bond on Customs Form 7555 in the sum of $9,000 and secures the payment of duties and charges on the warehouse entry.

Certainly it is well within the powers of the Secretary of the Treasury thus to safeguard the payment of duties by a treasury regulation, because the payment of duties is the primary objective of any Tariff Act.

Consequently I hold that the collector was within his authority in exacting the warehouse bond and that the bond is valid; and that, therefore, the original relationship created between the parties was a valid relationship. All that remains to be seen is whether what was done thereunder was in accordance with the law.

■ III. The surety also presses on me the point that an action cannot be maintained to collect a deficit existing between the amount of duties liquidated on a warehouse entry of goods and the amount realized from the sale of such goods. I disagree with this contention also.

Under section 559 of the Tariff Act of 1922 (19 USCA § 459), warehoused goods remaining in a bonded warehouse beyond three years are deemed to have been abandoned and may be sold under regulations of the Secretary of the Treasury.

This abandonment is not absolute, but merely frees the government from allowing the warehousing to continue and permits it to enforce the obligation to pay duties. Anglo-California Bank, Ltd., v. Secretary of Treasury (C. C. A.) 76 F. 742, 749; United States of America v. Judson Freight Forwarding Co. (D. C.) 9 F. Supp. 256, decided by Judge Bondy on July 6, 1933.

If the sale does not realize enough to cover the amount of duties assessed, article 935 of the Customs Regulations of 1923 permits suit for such deficit. Such power is vested in the Secretary of the Treasury by section 623 of the Tariff Act of 1922 (19 USCA § 539), above mentioned. Cf. United States of America v. Judson Freight Forwarding Co., per Bondy, J.

■ IV. The next point that the surety takes is that the liquidation of the entry was void and hence the surety was discharged from liability. I disagree.

In the first place, section 557 of the Tariff Act of 1922 (19 USCA § 457) does not prescribe the time when the collector shall liquidate the duties. It merely provides for payment of the duties on *withdrawal* of the goods from the warehouse at the rate *then*

*required.* The object of this, of course, is so to provide that, if the duties are increased either by statute or by executive order between the date of warehousing and the date of withdrawal, the importer would not be able to get his goods into consumption on the basis of a lower rate of duties obtaining at an earlier date, and, conversely, if the duties are reduced ad interim, he would get the benefit of such reduction, but this does not prevent the collector from liquidating the entry when he sees fit, whilst the goods are in the warehouse, and as there was no proof of any change of tariff on the goods here in question, the liquidation as made by the collector, from which no appeal was taken, must stand.

V. The point is also made in behalf of the surety that the examination of the merchandise was not made in accordance with the provisions of section 499 of the Tariff Act (19 USCA § 372), regarding the examination of merchandise, which inter alia provides as follows: "Sec. 499. *Examination of Merchandise.* * * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined."

In the present case there was one invoice and three of the cases from that invoice were sent to the public stores for examination by the Prohibition Administration in order to determine whether it was really a medicinal preparation and not merely a disguised alcoholic beverage. Annexed to the statement of the samples sent to the Prohibition Administration was a typed notice: "If in the opinion of your office or that of the Prohibition Commission, the packages ordered for examination are not sufficient to determine whether the contents are fit or unfit for beverage purposes, please order immediately the necessary additional packages for examination."

It will be remembered, as indicated above, that under section 1 of the Tariff Act of 1922, Schedule 8, par. 802 (19 USCA § 121, Schedule 8, par. 802), the duty on these bitters was $5 per proof gallon, and hence the examination did not, properly speaking, involve an appraisal of the value of the goods imported, but was merely a test of their nature.

I do not think, therefore, that the liquidation of the duties was invalid. It merely involved multiplying the number of gallons by $5, and from the papers it is shown that this computation was correctly done. But, assuming that the liquidation was invalid, it was not in my opinion void and, consequently, it cannot be subject to a collateral attack here, but should have been dealt with by appeal to the proper administrative board. Cf. A. S. Rosenthal Co. v. United States, 24 F.(2d) 351, 352 (C. C. A. 2).

VI. The other substantial contention made on behalf of the surety is that the merchandise in question here was not sold in accordance with the Customs Regulations because, as appears from the stipulation of facts, the appraised foreign value and the appraised actual domestic market value were not clearly set forth in the catalogue of sale.

As I said at the time of the argument, it seemed to me that this was the only real question involved in the case, and I have, therefore, carefully gone over the Treasury Regulations to see whether there was really anything of substance in the contention, and I find that there is not.

It must be remembered that the Treasury Regulations, chapter 18, sections 918 to 938, which deal with the disposition of merchandise unclaimed or in warehouse beyond three years, deal with two different categories of merchandise. "Unclaimed merchandise" is defined in article 919 as follows: "Merchandise taken possession of by the Collector as unclaimed for which no entry has been made and remaining in bonded warehouse or public store one year should be appraised and sold at public auction at the next regular sale as abandoned to the Government."

It is observable that the goods in question in the present case cannot be called "unclaimed merchandise" because it is common ground that there was an entry made for them by the importer.

In the next article, article 920, the category of merchandise which we have here is dealt with thus: "Imported merchandise

on which the duty has not been paid remaining in bonded warehouse beyond three years from the date of importation is abandoned to the Government and becomes subject to sale."

If we then turn to article 923 of the Customs Regulations of 1923, we find, first, a provision for regular sales of (1) unclaimed merchandise and (2) merchandise remaining in warehouse beyond three years, and then the next two paragraphs read (italics mine):

"Before *unclaimed* merchandise shall be sold it must be appraised at the foreign market value at the date of exportation in the principal markets of the countries whence exported, including in the dutiable value all charges and expenses required by law to be added on entry."

"*Such merchandise* shall also be appraised at its actual domestic value at the time and place of examination, making due allowance for depreciation or appreciation in such value since the date of exportation."

A careful reading of article 927 in connection with the articles just referred to seems to me to make it quite clear that the specification of the appraised foreign and domestic value of merchandise in the catalogue must apply to unclaimed merchandise only and not to merchandise which has been warehoused for more than three years.

Therefore, I hold that the point made on behalf of the surety that the omission of the appraised foreign value and the appraised domestic value from the catalogues under which the goods here in question were sold was not the omission of a requirement in respect of goods of this category, and, consequently, did not in any way vitiate the sale.

VII. At the time of the trial the government asked to amend its complaint so as to claim interest from August 30, 1929, and this request was granted and the amendment was noted on the original complaint and there duly initialed by me.

The rationale of the change of interest date is this:

It is agreed that the goods were brought into the United States on August 30, 1926, and, consequently, the period during which they could be warehoused before they were deemed abandoned to the government and thus subject to sale did not expire until the 30th of August, 1929.

I think that is the proper interest date, and, as above indicated in my formal decision at the beginning of my opinion, I give the government interest from that date until the judgment is paid.

VIII. An order for judgment in favor of the government in the amount claimed with interest from the date named may therefore be submitted to me for settlement on notice, unless the form thereof is agreed to by the defendant and settlement waived. The order may provide for judgment by default against the importer, McKetrick.